IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA,   §
            §
   Plaintiff/Respondent,  §
            §
v.            §   CIVIL ACTION NO. H-14-3703
            §   (CRIMINAL NUMBER H-12-121)
HUEY JOSEPH HEBERT, III,   §
            §
   Defendant/Petitioner.  §

## MEMORANDUM OPINION AND ORDER

Defendant-Petitioner Huey Joseph Hebert, III ("Hebert") has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") (Docket Entry No. 483).[1]  The United States (or the "Government") has filed United States' Response to Hebert's Motion for Relief Under 28 U.S.C. § 2255 (the "Government's Response") (Docket Entry No. 508).  For the reasons stated below, Hebert's § 2255 Motion will be denied, but Hebert will be granted leave to file an out-of-time appeal of his criminal conviction.

### I.  Background

Pursuant to a plea agreement with the Government, Hebert pleaded guilty on May 9, 2013, to one count of conspiracy to possess with the intent to distribute 50 grams or more of

---

[1]All docket entry references are to Criminal No. H-12-121.
Page citations are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document.

methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1),
841(b)(1)(A)(viii), and two counts of engaging in monetary
transactions in property derived from specified unlawful activity,
in violation of 18 U.S.C. §§ 1957(a),(b).[2]  On December 20, 2013,
the court sentenced Hebert to a term of 360 months' confinement,
the shortest sentence available under the Guidelines, consisting of
120 months on each of the three counts, to run consecutively.[3]

## II.  Analysis

### A.   § 2255 Standard of Review

A prisoner serving a sentence imposed by a federal court
"claiming the right to be released upon the ground that the
sentence was imposed in violation of the Constitution or laws of
the United States . . . may move the court which imposed the
sentence to vacate, set aside or correct the sentence."  28 U.S.C.
§ 2255(a).  If the court concludes that the prisoner's motion is
meritorious, it must "vacate and set the judgment aside and shall
discharge the prisoner or resentence him or grant a new trial or
correct the sentence as may appear appropriate."  28 U.S.C.
§ 2255(b).

"Relief under 28 U.S.C.A. § 2255 is reserved for
transgressions of constitutional rights and for a narrow range of

---

[2]See Indictment, Docket Entry No. 12, pp. 1-2; Plea Agreement,
Docket Entry No. 285 (SEALED), pp. 1-2; Transcript of
Re-Arraignment, Docket Entry No. 516, p. 28.

[3]Judgment in a Criminal Case, Docket Entry No. 448, p. 3;
Statement of Reasons, Docket Entry No. 449 (SEALED), p. 1.

injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "Following a conviction and exhaustion or waiver of the right to direct appeal, [the court] presume[s] a defendant stands fairly and finally convicted." United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998). Therefore, only two types of claims may be raised in a § 2255 motion. First, a § 2255 petitioner may raise a constitutional or jurisdictional claim. Id. Second, a § 2255 petitioner may assert any other type of claim that could not have been raised on direct appeal. Id. To obtain relief on this second type of claim the petitioner must show that allowing the asserted error to stand "would result in a complete miscarriage of justice." Id.

Mindful of Hebert's pro se status, the court has liberally construed his § 2255 Motion and related filings. See Estelle v. Gamble, 97 S. Ct. 285, 292 (1976) ("[A] pro se document is to be liberally construed."); Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam) (stating that pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, a pro se petitioner's "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." United States v. Woods, 870 F.2d 285, 288 n.3 (5th Cir. 1989)." The court gives no weight to factual assertions "unsupported and

unsupportable" by evidence in the record.  See Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983).

## B.   Ineffective Assistance of Counsel Standard of Review

Hebert claims that his attorney ("Counsel") provided ineffective assistance.  The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel.  Yarbrough v. Gentry, 124 S. Ct. 1, 4 (2003).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).  A petitioner asserting ineffective assistance of counsel therefore must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense.  Id.  "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."  Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997).  "A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."  Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994).

"The performance prong of Strickland requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks and citation omitted).  "Therefore,

courts may not fall prey to 'the distorting effect of hindsight' but must be 'highly deferential' to counsel's performance." Carter, 131 F.3d at 463 (quoting Strickland, 104 S. Ct. at 2065-66). "Hence, there is a strong presumption that the performance 'falls within the wide range of reasonable professional assistance.'" Id. (same). The burden is on the defendant to overcome this presumption. Id.

To establish Strickland prejudice a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The defendant therefore "must establish that the attorney's errors were so deficient as to render the verdict fundamentally unfair or unreliable." Carter, 131 F.3d at 463. The burden is on the defendant to affirmatively prove prejudice. Strickland, 104 S. Ct. at 2067.

If the defendant pleaded guilty, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S. Ct. 366, 370 (1985). The court's assessment is made based on the totality of the circumstances, United States v. Kayode, 777 F.3d 719, 725 (5th Cir. 2014), including "a prediction of what the outcome of a trial might have

-5-

been," Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994).   To establish prejudice in the sentencing context, the defendant must show a reasonable probability that, but for counsel's errors, the defendant would have received a lesser sentence than he did. United States v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004).

## C.   Hebert's Arguments

In his § 2255 Motion, Hebert identifies four grounds for relief, each premised on his attorney's alleged ineffective assistance.   As discussed below, the evidence in the record is sufficient for Hebert to be granted an out-of-time appeal on his first ground, and counsel will be appointed to represent him. Hebert's three remaining grounds lack merit, and the Government's request for summary judgment on those grounds will be granted.

### 1.   Failure to File a Notice of Appeal

Hebert claims that he instructed Counsel to file an appeal on his behalf and that Counsel failed to do so.[4]   "[F]ailure to file a requested [Notice of Appeal] is per se ineffective assistance of counsel, with or without a showing that the appeal would have merit." United States v. Tapp, 491 F.3d 263, 265 (5th Cir. 2007) (citing Roe v. Flores-Ortega, 120 S. Ct. 1029 (2000)).   To show

---

[4]§ 2255 Motion, Docket Entry No. 483, p. 4; Brief in Support of a Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to Title 28 U.S.C. § 2255 ("§ 2255 Brief"), Docket Entry No. 484, pp. 4-7; Affidavit, Docket Entry No. 484-1, p. 1.

prejudice in such a case, a defendant need only demonstrate a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, the defendant would have timely filed one. <u>Flores-Ortega</u>, 120 S. Ct. at 1038. "[T]he rule of <u>Flores-Ortega</u> applies even where a defendant has waived his right to direct appeal and collateral review." <u>Tapp</u>, 491 F.3d at 266. "In such circumstances, if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver." <u>Id.</u>

Hebert alleges that prior to sentencing he told Counsel that he would want to appeal any sentence over 14 years.[5]  Hebert further alleges that after his sentencing he sent a letter to his mother, which she forwarded to Counsel, specifically requesting that Counsel file a notice of appeal.[6]  Counsel has filed an affidavit in which he avers that Hebert never instructed him, or anyone with his firm, to file a notice of appeal on Hebert's behalf.[7]  Counsel also states that "Mr. Hebert and his family never requested or contacted my office about an appeal or the

---

[5]§ 2255 Brief, Docket Entry No. 484, p. 5.

[6]<u>Id.</u>; Affidavit, Docket Entry No. 484-1, p. 1 ¶¶ 1-2.

[7]Affidavit of Tad Nelson, Docket Entry No. 515, p. 1.

possibilities of an appeal after the plea and punishment."[8]
Counsel's statements are conclusory, and Counsel did not refer to
any contemporaneous records in support of his assertions.[9]  Under
this record and given Hebert's <u>pro se</u> status the court concludes
that Hebert has met his burden, and that he is entitled to file an
out-of-time appeal.[10]

    2.   <u>Failure to Retest Purity of Methamphetamine</u>

Hebert argues that Counsel was ineffective in failing to
re-test the purity of methamphetamine seized from two of Hebert's
co-conspirators.[11]  At the time of their arrests Nash Pitre and
Daniel Bourg were in possession of 962.2 grams and 484 grams,
respectively, of methamphetamine.[12]  Government testing determined
that the methamphetamine was 99% pure.[13]  For sentencing purposes

---

[8]<u>Id.</u>

[9]Many criminal defense attorneys ask their clients to execute
an appeal decision form after sentencing to provide contemporaneous
evidence of their clients' wishes.

[10]As discussed in the Conclusions and Order section below, the
Clerk will reinstate Hebert's criminal case on this court's docket,
will reenter Hebert's judgment of conviction as of the date of this
Memorandum Opinion and Order, and will file a notice of appeal on
Hebert's behalf.  <u>See</u> Fed. R. App. P. 4(b)(1)(A); <u>United States v.
West</u>, 240 F.3d 456, 461-62 (5th Cir. 2001).

[11]§ 2255 Motion, Docket Entry No. 484, pp. 7-9; <u>see</u> <u>also</u> Letter
from Hebert to Judge Sim Lake (October 30, 2013), Docket Entry
No. 403 (SEALED), p. 1 (specifying that Hebert sought only to
retest drugs seized from Pitre and Bourg in 2010).

[12]Factual Basis for Guilty Plea, Plea Agreement, Docket Entry
No. 285 (SEALED), pp. 10-11.

[13]<u>Id.</u>

methamphetamine that is greater than 80% pure is considered "ice,"[14] and it is equivalent to ten times the amount of a mixture or substance containing an unspecified amount of methamphetamine.[15] Converted to a marijuana equivalent, Pitre's and Bourg's methamphetamine accounted for 28,926 kilograms of the 42,731 total kilograms for which Hebert was responsible.[16]   Based on that total amount, Hebert's base offense level was 38.[17]   At sentencing the court determined that Hebert's total offense level was 41.[18] Because Hebert's criminal history category was IV,[19] his overall guideline range was 360 months to life in prison.[20]

---

[14]United States Sentencing Commission, Guidelines Manual, Note C to Drug Quantity Table (Nov. 2012).   Citations to the U.S.S.G. throughout this opinion are to the 2012 version.

[15]See id. § 2D1.1(c); see also § 2D1.1, cmt. n.8(D).

[16]See Presentence Investigation Report, Docket Entry No. 341 (SEALED), pp. 25-26 ¶ 104. Pitre's 962.6 grams of ice converted to 19,252 kilograms of marijuana, and Bourg's 483.7 grams of ice converted to 9,674 kilograms of marijuana. See id. The probation officer calculated a total of 54,071 kilograms of marijuana for which Hebert was responsible. See id. At sentencing, the court sustained Hebert's objection to 11,340 kilograms of marijuana. See Transcript of Sentencing, Docket Entry No. 504, p. 4; Statement of Reasons, Docket Entry No. 449 (SEALED), p. 1 ¶ I.B.1. Therefore, Hebert was ultimately held responsible for 42,731 kilograms of marijuana-equivalent.

[17]See U.S.S.G. § 2D1.1(c)

[18]Transcript of Sentencing, Docket Entry No. 504, p. 6; Statement of Reasons, Docket Entry No. 449 (SEALED), p. 1 ¶ III.

[19]Id.; Presentence Investigation Report, Docket Entry No. 371 (SEALED), p. 30 ¶ 132; Statement of Reasons, Docket Entry No. 449 (SEALED), p. 1 ¶ III.

[20]See U.S.S.G., ch. 5, pt. A, Sentencing Table; Statement of Reasons, Docket Entry No. 449 (SEALED), p. 1 ¶ III.

At his rearraignment Hebert expressed to the court that he wished to have the drugs retested prior to sentencing:

THE COURT:      Has [your attorney] done everything you have asked him to do?

DEFENDANT:      There's only one thing that I'm trying to get done is the retesting, sir.

. . . .

MR. NELSON:     Your Honor, he wants to check the purity of the meth. We have an agreement with the government's lawyer that after the plea, before sentencing, if we can come up with the funds, and we may even come back to the Court and ask for the funds, we will have an opportunity to get that done.

THE COURT:      All right.   Is that your understanding, Mr. Hebert?

DEFENDANT:      Yes, sir.[21]

Hebert contends that his family agreed to pay for the testing, but that Counsel failed to have the tests conducted before sentencing or seek a continuance to do so.[22] Counsel avers that Hebert and his family "were told that the steps necessary to have such investigation performed would not begin until adequate funds were received by [Counsel's] office for the expenses."[23] According to

---

[21]Transcript of Re-arraignment, Docket Entry No. 516, pp. 11-12.

[22]See § 2255 Brief, Docket Entry No. 484, pp. 7-8; Letter from Hebert to Judge Sim Lake (October 30, 2013), Docket Entry No. 403 (SEALED), p. 1.

[23]Affidavit of Tad Nelson, Docket Entry No. 515, p. 2.

-10-

Counsel, "[the drugs] were never tested because funds were never received."[24]

Even assuming that Counsel was deficient in failing to have the methamphetamine retested, any failure was not prejudicial to Hebert's defense. Hebert argues that "[t]he increase in drug quantity also caused an overall increase in sentencing."[25] But Hebert is wrong. Had testing revealed that the methamphetamine was less than 80% pure -- or even that the purity was negligible -- Hebert's guideline range would have been the same, and the court would have sentenced Hebert to the same term of imprisonment. Without the 28,926 kilograms of marijuana-equivalent attributable to Pitre and Bourg, Hebert still would have been responsible for 13,805 kilograms. This would have decreased Hebert's base offense level from 38 to 36.[26] However, a two-level decrease still would have yielded a total offense level of 39.[27] With a criminal history category of IV, Hebert's guideline range would have been 360 months to life in prison, the same as for a total offense level of 41.[28]

---

[24]Id.

[25]§ 2255 Brief, Docket Entry No. 484, p. 8.

[26]See U.S.S.G. § 2D1.1(c)(2).

[27]Hebert received a two-level upward adjustment based on specific offense characteristics, a four-level upward adjustment for his role in the offense, and a three-level downward adjustment for acceptance of responsibility. See Presentence Investigation Report, Docket Entry No. 371 (SEALED), p. 27 ¶¶ 113, 115; Statement of Reasons, Docket Entry No. 449 (SEALED), p. 1 ¶ I.B.2. Hebert's total offense level after adjustments was 41. Id. ¶ III.

[28]See U.S.S.G., ch. 5, pt. A, Sentencing Table.

The court sentenced Hebert to 360 months in prison.   Nothing in Hebert's § 2255 Motion or the record before the court suggests that a downward departure would have been appropriate even if the drug purity were less than alleged by the Government.   <u>See also</u> <u>United States v. Beltran</u>, 122 F.3d 1156, 1159-60 (8th Cir. 1997) (concluding that low purity of methamphetamine present in a mixture is a "forbidden factor" that may not be used as a basis for downward departure).   Hebert has failed to establish that Counsel's alleged deficiency resulted in any demonstrable increase in his sentence.   Nor, for the sake of completeness, has Hebert established that but-for Counsel's failure to have the methamphetamine retested, Hebert would have insisted on going to trial.   Hebert has failed to establish prejudice, and his claim of ineffective assistance of counsel lacks merit.

3.   <u>Failure to Advocate at Sentencing</u>

Hebert's third ground includes two separate arguments.   First, Hebert alleges that Counsel assured him that he would not receive a sentence in excess of 168 months,[29] and that had Hebert known how long his sentence would be, he would not have pleaded guilty.[30] Second, Hebert argues that Counsel was ineffective at sentencing

---

[29]§ 2255 Brief, Docket Entry No. 484, p. 9.

[30]<u>Id.</u> at 10.

because Counsel did not object to the court's running Hebert's sentences consecutively.[31]  Both of these arguments lack merit.

Hebert "contends that Counsel assured him that he would not receive a sentence that would exceed 168 months."[32]  Hebert further states:   "[W]hen the Judge asked if I was promised a certain sentence I lied and said no, under advice of counsel."[33]  Hebert claims that "[h]ad [he] had that correct information he would have refused a plea and elected to go to trial."[34]  Hebert's attorney does not address these specific allegations in his Affidavit.  As the Fifth Circuit has concluded, "[f]ailing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by Strickland." Teague v. Scott, 60 F.3d 1167, 1171 (5th Cir. 1995).  "By grossly underestimating the defendant's sentencing exposure counsel breaches his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." Grammas, 376 F.3d at 436-37 (internal quotation marks, alterations, and citation omitted).  However, Hebert's allegations in his § 2255 Motion and Affidavit are directly refuted by his prior statements at his rearraignment:

---

[31]Id. at 9-10; Petitioner('s) Motion for Traverse, Docket Entry No. 535, pp. 4-9.

[32]§ 2255 Brief, Docket Entry No. 484, p. 9.

[33]Affidavit, Docket Entry No. 484-1, p. 1 ¶ 5.

[34]§ 2255 Brief, Docket Entry No. 484, p. 10.

THE COURT:       Let me emphasize to you the importance of
                 providing truthful and complete answers
                 to my questions this morning.  Sometimes
                 after a defendant has been sentenced, he
                 will file a motion or will write the
                 Court a letter saying that the answers he
                 gave at his re-arraignment were not
                 truthful or were not complete.    [You]
                 need[] to understand that I am going to
                 rely not only today on the answer that
                 you give me but at all times in the
                 future.  If you should ever in the future
                 say something that is different from what
                 you have told me today, I will disregard
                 that future statement and rely on what
                 you have told me today.  Mr. Hebert, do
                 you understand that?

DEFENDANT:       Yes, sir.

. . .

THE COURT:       Has anyone promised you what sentence you
                 will receive if you plead guilty?

DEFENDANT:       No, sir.

Nevertheless, even if Counsel's performance was deficient,

Hebert has not established that, but for Counsel's erroneous

advice, Hebert would have insisted on going to trial.  To establish

prejudice in this context, Hebert "'must convince the court that a

decision to reject the plea bargain would have been rational under

the circumstances.'"  United States v. Kayode, 777 F.3d 719, 725

(5th Cir. 2014) (quoting United States v. Padilla, 130 S. Ct.

1473).  In making this determination the court considers the

totality of the circumstances, including the allegations in

Hebert's § 2255 Motion and Affidavit, his likelihood of success at

trial, the risks he would have faced had he gone to trial, and any

-14-

admonishments by the court prior to Hebert's entry of a plea.  <u>See</u>
<u>id.</u>

Hebert's allegation that he would have gone to trial is
conclusory.[35]  He provides no specific support for his assertion,
nor does he point to any evidence to suggest that going to trial
would have been a rational decision.  The evidence against Hebert
in this case was substantial, including multiple wire-intercepts
and cooperating witnesses.  Moreover, by pleading guilty Hebert
received a three-level reduction for acceptance of responsibility.[36]
Without that reduction Hebert's total offense level would have
been 43,[37] yielding a guideline range of life in prison.[38]  Had
Hebert gone to trial he would have risked receiving a substantially
longer sentence.  Lastly, the court thoroughly admonished Hebert at
rearraignment as to both the range of potential sentences he might

---

[35]Additionally, this allegation, made in the body of Hebert's
§ 2255 Motion, is unsupported by any evidence; Hebert's sworn
affidavit does not address the effect of Counsel's prediction on
Hebert's decision to plead guilty.  "This glaring omission in
[Hebert's] affidavit alone would likely justify [rejection of this
ground for relief]."  <u>See</u> <u>Kayode</u>, 777 F.3d at 725-26 n.4.

[36]<u>See</u> Plea Agreement, Docket Entry No. 285 (SEALED), p. 5 ¶ 11;
Statement of Reasons, Docket Entry No. 449 (SEALED), p. 1 ¶ I.A.2.

[37]<u>See</u> U.S.S.G., ch. 5, pt. A, Sentencing Table cmt. n.2 ("An
offense level of more than 43 is to be treated as an offense level
of 43.").

[38]<u>See</u> Presentence Investigation Report, Docket Entry No. 371
(SEALED), pp. 27-28 ¶¶ 118-21.

receive and the then-present uncertainty as to where his sentence might fall within that range:[39]

> THE COURT: Mr. Hebert, on Count 1 the minimum sentence that you face is 10 years in prison, and you face a maximum sentence of life in prison. . . . Mr. Hebert, do you understand that those are the possible consequences of your guilty plea?
>
> DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: No determination has been made about what [your] sentence[] will be. If I accept your guilty plea, a probation officer will interview you, investigate the facts of the case, and prepare a presentence investigation report. . . . At the time of your sentencing, I will rule on any objections that you or the government may have to the presentence report. I will then determine your advisory guideline range and your sentence. What [you] need[] to understand today is that this process of determining your sentence has not yet begun. That means no one knows what advisory guideline range the probation officer will recommend, or what advisory guideline range I will find to be applicable, or what sentence I will impose.
>
> Mr. Hebert, do you understand that?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: If the sentence that I should impose is greater than the sentence that you now expect, or greater than the sentence that

---

[39] "[W]hile judicial admonishments are not a substitute for effective assistance of counsel, they are relevant under the second Strickland prong in determining whether a defendant was prejudiced by counsel's error." Kayode, 777 F.3d at 728-29.

your attorney or anyone else may have
predicted, you will be bound by your
guilty plea today regardless of your
sentence. You will not be allowed to
change your mind and withdraw your guilty
plea because you are not satisfied with
your sentence.

Mr. Hebert, do you understand that?

DEFENDANT:     Yes, sir.

Hebert has failed to establish a reasonable probability that, but

for Counsel's predictions as to the length of Hebert's sentence,

Hebert would have gone to trial. Hebert has not demonstrated

prejudice on this ground.

Hebert also argues that Counsel failed to "object and place

before the Court alternatives to the Court's structuring of

Movant's sentence."[40] Hebert was sentenced to a term of 360 months

in custody, consisting of 120 months on each of the three counts to

which he pleaded guilty, each sentence to run consecutively.[41]

Hebert argues that his sentences should have been grouped under

§ 3D1.1 of the guidelines and run concurrently.[42] Hebert misunder-

stands how his sentence was determined. Hebert's guideline range

for Count 1 was 30 years to life in prison.[43] In calculating

_____

[40]§ 2255 Brief, Docket Entry No. 484, p. 9.

[41]Transcript of Sentencing, Docket Entry No. 504, p. 7;
Judgment in a Criminal Case, Docket Entry No. 448, p. 3.

[42]§ 2255 Brief, Docket Entry No. 484, p. 10; Petitioner('s)
Motion for Traverse, Docket Entry No. 535, pp. 4-9.

[43]See Second Addendum to the Presentence Report, Docket Entry
No. 433 (SEALED), p. 2; Transcript of Sentencing, Docket Entry
No. 504, p. 6.

Hebert's guideline range, the Probation Officer applied the grouping rules in § 3D1.2 and relied on the base offense level for Count 1, the most serious count to which Hebert pleaded guilty.[44] At sentencing, the Government sought a sentence at the low end of the guideline range.[45] Counsel made no further objections beyond those already filed with the court.[46]   The court sentenced Hebert to 30 years, the minimum sentence under the guidelines.[47]   That the court structured the sentence as 10 years on each of the three counts, to run consecutively, had no effect on the length of the sentence Hebert received.   Furthermore, Hebert points to no evidence that a downward departure was warranted.   Counsel had no duty to raise futile objections, and Counsel's performance was not deficient.   However, even if Counsel's failure to object was unreasonable, any deficiency on the part of Counsel did not prejudice Hebert.   This ground for relief lacks merit.

4.   <u>Breach of Plea Agreement</u>

Finally, Hebert contends that Counsel was ineffective in failing to object to the Government's alleged breach of the plea agreement.   Specifically, Hebert alleges that "[t]he plea agreement

---

[44]Presentence Investigation Report, Docket Entry No. 371 (SEALED), p. 27 ¶ 110.

[45]Transcript of Sentencing, Docket Entry No. 504, p. 7.

[46]<u>See</u> <u>id.</u>

[47]<u>Id.</u>

specifically listed assets that were to be forfeited. Yet, the Government moved and the Trial Court Ordered additional forfeiture not listed in . . . the plea agreement."[48]  This argument lacks merit.

Hebert's Plea Agreement states that "Defendant agrees to forfeit whatever interest he/she may have in assets related to narcotics trafficking."[49]  The Plea Agreement specifically identifies Hebert's property at "0 Hawthorne Street" in Seabrook, Texas, as having been "purchased with narcotics trafficking proceeds obtained from the commission of Count One of the Indictment."[50]  The Plea Agreement further identifies the 0 Hawthorne Street property by subdivision and lot number, but it does not list a block number.[51]  Following Hebert's rearraignment, the court entered a Preliminary Order of Forfeiture, identifying Hebert's property as described in the Plea Agreement.[52]  One week later the Government filed an unopposed motion to amend the preliminary order of forfeiture, identifying the same property at 0 Hawthorn Street, but adding a reference to the specific block number.[53]  The court

_____

[48]§ 2255 Brief, Docket Entry No. 484, p. 11.

[49]Plea Agreement, Docket Entry No. 285 (SEALED), p. 13 ¶ 19.

[50]Id. ¶ 21.

[51]See id.

[52]Preliminary Order of Forfeiture, Docket Entry No. 286.

[53]Motion to Amend Preliminary Order of Forfeiture, Docket Entry No. 288.

granted the Government's motion and entered an Amended Preliminary Order of Forfeiture.[54]   After sentencing the Amended Preliminary Order of Forfeiture was included in Hebert's final judgment of conviction.[55]

It is not clear that Hebert's claim is even cognizable in a § 2255 motion.   Nevertheless, it is clear that the Government did not breach the plea agreement, Counsel had no duty to object to the change in the Order of Forfeiture, and Hebert suffered no prejudice as a result.   This ground for relief lacks merit.

## D.   Evidentiary Hearing

"The question whether an evidentiary hearing is necessary to resolve charges of ineffective assistance depends on an assessment of the record."   United States v. Smith, 915 F.2d 959, 964 (5th Cir. 1990).   A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, files, and record conclusively show that the prisoner is entitled to no relief.   United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992).   "If the record is clearly adequate to dispose fairly of the allegations, the court need inquire no further."   Smith, 915 F.2d at 964.   "A hearing is also unnecessary when the petitioner's allegations are 'inconsistent with his conduct' and when he does not offer

---

[54]Amended Preliminary Order of Forfeiture, Docket Entry No. 289.

[55]Order of Forfeiture at Sentencing, Docket Entry No. 440.

-20-

'detailed and specific facts' surrounding his allegations." <u>Id.</u>
(quoting <u>Davis v. Butler</u>, 825 F.2d 892, 894 (5th Cir. 1987)).  The
court concludes that the evidence in the record is clearly adequate
to dispose fairly of Hebert's allegations.  With respect to
Hebert's first ground for relief, Hebert has met his burden, and he
will be granted leave to file an out-of-time appeal.  Hebert's
remaining grounds for relief lack merit, and the evidence in the
record is sufficient to establish that Hebert is not entitled to
any relief.  No evidentiary hearing is required.

### III.  Conclusion and Order

The court concludes that Hebert has established his right to
relief on his first ground, i.e., that Counsel failed to file a
notice of appeal, but Hebert's remaining grounds for relief lack
merit.  "Since the 1960s, [the Fifth Circuit], pursuant to a § 2255
motion, has permitted an out-of-time appeal when a defendant was
denied assistance of counsel on appeal, through counsel's failure
to perfect an appeal."  <u>United States v. West</u>, 240 F.3d 456, 459
(5th Cir. 2001).  However, the statutory remedy provided by § 2255
requires the court to vacate the judgment and either discharge the
prisoner, resentence him, correct the sentence, or grant a new
trial.  Therefore, in choosing the "judicial remedy" of granting
leave to file an out-of-time appeal, "the court must deny the
statutory remedy, for it is inconsistent to 'grant' § 2255 relief

in name, yet deny it in substance." <u>Id.</u>[56] Accordingly, Hebert's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 483) is **DENIED** in its entirety, but Hebert will be granted leave to file an out-of-time appeal.  In order for the appellate court to have jurisdiction over Hebert's appeal this court must first reinstate Hebert's judgment of conviction in his criminal case to trigger the running of a new Rule 4(b) appeal period.  <u>Id.</u>  The clerk is therefore **ORDERED** to (1) reinstate Criminal Case No. H-12-121 on this court's docket as to Hebert only, (2) reenter Hebert's Judgment in a Criminal Case (Docket Entry No. 448) as of the date of this Memorandum Opinion and Order, and (3) enter a notice of appeal on Hebert's behalf.

The court hereby **APPOINTS** the Federal Public Defender's Office for the Southern District of Texas to represent Hebert on appeal. The clerk is **ORDERED** to provide copies of this Memorandum Opinion and Order to the parties and to the Federal Public Defender's Office.

**SIGNED** at Houston, Texas, on this 21st day of August, 2015.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[56]Under this judicial remedy, the district court must dismiss <u>without prejudice</u> that part of the § 2255 Motion for which the out-of-time appeal was granted.  <u>West</u>, 240 F.3d at 462.